Whenever you're ready. Thank you, Your Honor. Good morning and may it please the court. Craig Jerome on behalf of the defendant appellant Frank Gonzales. I'm going to attempt to reserve three minutes for rebuttal if we make it there. We raised three substantive issues in our briefing before the court but given the time constraints of today's argument I'm going to, unless the court has other opinions, I'm going to attempt to focus on the first and the third of those issues, the essentially the Brady issue and the methamphetamine guideline issue. So again unless the court has other questions I'd like to turn first to the the Brady issue. In this case the government repeatedly gambled with its Brady obligations only disclosing information to which Mr. Gonzales was constitutionally entitled when they were backed into a corner and had no other option. The government repeatedly engaged in gamemanship by gambling basically in two major ways. First by insisting over and over again that they would be able to prove their case and lay the foundation for crucial evidence in this case without calling the cooperating sources a witness. The second way was by betting that even if they were able to do that, that the materials that were not disclosed in this case didn't need to be disclosed under Brady and Giglio as potentially relevant to impeaching. In the end they disclosed the information although quite late but in time for you to use it for cross examination. Were they required to do it any earlier than that? Well I think that Cloud which is I think one of the court's more recent Brady Giglio cases says that it needs to be disclosed in time that we can make good use of it and the prejudice you know that gets to sort of the third prong. The prejudice goes beyond merely just having the information available for cross examination. I mean there's a degree of chaos. Is there a case that says you get it earlier than in fact you were given it? Well I mean I think the issue Your Honor is that if what's happened in this case is allowed to happen, if this court sort of places its imprimatur on the idea that you can disclose Brady material a week before trial when you're forced to do so and then some more can leak out a few days before trial and then mid trial some more can come out and I do want to talk about some stuff that I also think we were entitled to that we didn't receive in this case but if that's the standard that's what the government's going to do and I think the government's. I understand that which is basically what my question is. I'm sympathetic with your side of it that is to say more information earlier is better. You can do all kinds of things with information if you get it early but I'm asking you do you have a case that tells you you're entitled to get it earlier than in fact you got it? I think what the the quote from Cloud. Cloud says the rule of disclosure is the rule is disclosure not gaming the impact that disclosure must have. It also says and I'm not finding the the quote but it says that it needs to be disclosed in time for us to make use of it and not just beyond. I think we do have case law that says that yes I don't think that's contested or at least I guess I'm just one of three but I don't think that's contested but and I think the district court in this case recognized that and sort of shook her finger figuratively at at the US Attorney's Office and let them know if that wasn't if they that she took these Brady obligations very very seriously so she did this in-camera review I think mid-trial and and so but I but I think the situation is that she's made the decision that some of the what wasn't disclosed was cumulative and made the decision that that you got it in time in order to be able to use it meaningfully and that will be you know really important call to be made in the trial court and frankly my my vote is that the US Attorney's Office is taking a big risk there but on this case what we have is a ruling from the district court judge that I read to be saying she thought you got it in time and that you weren't prejudiced so I think and I want to give you a chance to respond I think you have to convince me that she abused her the district court abused its discretion in making that ruling in order to prevail here yes your honor and I and what's your best shot at that that you got it too late and that you were prejudiced sir well I think that the the prejudices manifest in this case and there is like I said there is some stuff that I think we should have received that we didn't receive but even based on the stuff that we did receive we had no to do any pre-trial investigation of the complaining witness or some of the claims that the complaining witness made we were not able to ask more specific questions during our jury selection we weren't able to ask or make more pointed use of the information during opening statements you can tell from the the trial record information wasn't the information information you already had but there were other instances of the cooperator what is it you didn't have that you got that you think you got too late well one of the things is the these cooperating source agreements which we didn't have and we had to fight tooth and nail I think there were other instances of that right there were other instances I'm sorry just enlighten me because I don't want to if I have this wrong this is your chance to tell me but my understanding is that she thought what what had not been disclosed was cumulative because it was other instances of this individual serving as a cooperator and the jury knew that right and I think there's an example of an earlier cooperation agreement but not one that he had breached so well that's the that's the correct me factually if I've got that right that's the cooperating source agreements which actually the government says they provided quote-unquote voluntarily during the middle of the trial but which they basically disclosed when it was made clear that it was going to get the jury knew that the person had been a cooperator back in 2021 they did not know and we do not know and this court still does not know what the circumstances were of the person becoming a cooperator back in 2021 until the CSAs are disclosed we don't know the formality of this cooperation agreement back in 2021 whether he's sort of cooperating on a more informal basis the fact that the cooperator back in 2021 signed two cooperation agreements entered into a contract with the government where they're saying I'm not going to break the law anymore and then a year later commits a new very serious criminal offense I think that that was area for cross-examination of both the agents and the cooperator yes we got it too late and we weren't able to more fully investigate the circumstances under which they became a cooperator in 2021 and we weren't able to fully litigate that and the government to this day has never said what the circumstances of that were in their briefing before this court they say well people don't always become cooperators because they've been involved in some criminal activity but they've never said that that's the case with this cooperator it's not in the sealed file that was provided to this court the reason why he became a cooperator in 2021 and I think that's a significant issue and if in fact he was not brought to the attention of the DEA in 2021 because of some criminal activity or some involvement in drug trafficking his case his handling agent from 2021 testified at the trial so I don't know why the government wouldn't have gotten into that with the case agent if there was an innocent explanation help me understand what you would have done or how it would have helped you to have had the information earlier that is to say the cooperator does a control by comes back out gives it to the agents they then go get a warrant and then they find all kinds of things in the house so would they not have been able to get the warrant I mean because once they get in the house and find all this stuff I think your clients in big trouble and no matter what this is the cooperator says well there's I mean there's two first he's charged with the stuff directly involving the cooperator in count one so that's a charge for which the cooperators testimony is directly relevant the cooperators testimony or the fact that there's a methamphetamine on January 26 the day before the search takes place also certainly colors the jury's interpretation of the evidence of January 27th which is that they found methamphetamine in a car on the property that's registered to mr. Gonzalez if the jury didn't find that he had sold methamphetamine the day before perhaps our explanation that that methamphetamine belonged to one of the numerous other people at the house or numerous other people that may have had access to the car would have been more compelling to the jury right the fact that there's a methamphetamine transaction on the 26th I think colors the evidence of the 27th the other thing that I want to make clear to the court today and I talked to miss Euchre about this this morning but the sealed case file that was provided to the government there's an attempt to the court there's an attachment B in there which is what the district court reviewed mid-trial or what the district court ordered disclosed mid-trial what was disclosed to the defense is not exactly the same as what is attachment B and what was provided to this court what was disclosed to the defense has numerous redactions that are not part of attachment B and I don't think there was anything nefarious about that but what I would ask is that we be allowed to file under seal what we were actually provided by the government in response to the court's order because some of the things that are in attachment B were not provided to the defense and I didn't realize this until frankly until I was preparing for an argument yesterday and there were things that I was like I don't remember seeing this so I went back and looked at what we had been provided the stuff that was in there that we were not provided and I understand that it's sealed so I'm trying to be circumspect about it but as far as specific things in the CS's file about specific instances where the CS represents that he's aware of other people in the state of Hawaii and elsewhere that are involved in large-scale methamphetamine trafficking none of that was provided to us in terms of specifics or even sort of generalities what does it take for us I mean you requested an in-camera review and you received an in-camera review by the judge by the trial court judge during trial right yes so what's the best rationale you have for us taking a second look at the at the sealed materials I think the first thing is that the court needs to look at those in order to determine whether what the court ordered disclosed was all of the Brady material in the file or whether there was stuff additional things that should have been disclosed relying on speculation that the district court didn't do its job right we don't typically do that I understood your argument to be maybe you're making both arguments I understand your arguments we we got this material but we got it too late and we were prejudiced and so now you're asking us to consider whether you yes and the other thing is we don't obviously we didn't have access to the sealed case file and what was disclosed to us based on the court's order that these additional documents be disclosed like I said is more redacted than what was provided an attachment be to this court and I think those redactions are significant because it's not clear based on the district court's order the district court order basically said don't make any more redactions than are necessary but I don't think the district court specifically said okay this is the redact the information that you should be redacting from these documents the government made that call I do unless the court has any other questions you good morning your honors may it please the court Barbara Euchre for the United States I'd like to start with the Brady Giglio issue since that was the discussion that your honors just had the district court did not abuse its discretion in allowing the DEA's confidential source to testify in this here the government had video and audio recordings of the defendants selling drugs to the CS the government planned to admit those recordings through law enforcement witnesses that wasn't because of concern about Brady or Giglio with respect to the CS but it was because the government repeatedly represented mr. Gonzalez and the district court that it would not call the CS your honor because the government in good faith believed that it could admit the videos it could lay the foundation through law enforcement witnesses the audio recording was a live recording that long the DEA agents were listening to as it happened and the DEA agents were the ones who hooked up the CS with the camera in his on his hat so you know the government had every reason to believe that it could lay the foundation and make that happen the district court there were many discussions with it on in status conferences among the parties in the district court about this issue so it came as really no surprise at the fact that the government ended up calling the CS because the court had made repeated warnings that if the government you know that she hadn't ruled yet on whether the government could admit the recordings without the CS and so they were sort of reserving their options until it got to the point where it became clear to be safe they decided to call the CS so your honor I want to I think it's important to focus on the actual material here in the timing first all of the impeachment information was disclosed all the material impeachment information was disclosed prior to trial beginning there were additional cumulative disclosures as your honors aware that were made after trial began but all of it was made before the CS testified and I'm sure that's consistent with the with the last time I looked with the u.s. attorneys own internal manual it's not just before trial they you know the problem is they're trying to plan their defense and strategize and do their own discovery it's concerning yes your honor I hear that and in in consistent with our practices is to make sure that the defense has effective use of this material and it wasn't until trial began that the defense the the government actually made the decision to call the CS so there wasn't the this idea that there was gamesmanship leading up we the government genuinely did not believe it would need to call the CS to testify and that there are several court conferences where the court is discussing with this this with the parties and understanding and in telling the defense you're not entitled to this material because the CS is not going to testify that the CS would have to testify that's what apparently what your team needed to put on his case and I appreciate that right but apparently the file was reviewed and not everything was was produced at least according to the district court so your honor I think it's important to keep in mind that the only there were 15 pages that the district court ordered to be produced after the in-camera review and the defense the defense is saying because the district court ordered it to be disclosed that means it's Brady Giglio they don't point to a single piece of information in those disclosures that that they can say had any impeachment value whatsoever and they had that material before the CS testified they were also given opportunities to call agent Delaney again that's the the 15 pages the district court ordered is the only material that they didn't have on cross of Delaney of agent Delaney so I believe that's absolutely correct your honor they had an opportunity to recall him that the district court said we can even postpone your cross if you'd like they they didn't do so or we can can continue your cross at a later date they didn't do so and you know the question is whether they were able to have a substantial opportunity to use the evidence and they did and this case is very much like the Okla decision I'm sure your honors refer to it as that decision it's 94 f4 782 it has a longer case name but in that in that case the defense wasn't even able to have the opportunity to cross the witness where they got additional impeachment evidence and the court there clearly recognized that you know there was no prejudice because they had other impeachment material which was cumulative and so I think that case is really on port on point here and really important to keep in mind it is close to mind I promise having authored it but I just want to make sure that that we're clear I think judge Fletcher is also weighed in on this and maybe we all have you know we take this very seriously and the u.s. attorney has this obligation as you know to produce it and not to decide for it in its view whether something's going to be material in the end I mean defendant needs to have that discovery and to be able to do their strategizing and planning and so the fact that it's produced mid-trial is concerning and I infer I am one of three up here but in my view the u.s. attorney takes a very serious risk and I think I think that the district court conveyed as much yes your honor and and I believe and we hear that and share your concern and agree that you know we take our obligations very seriously I think this was this was just a case that was very unique in terms of the posture and decision-making around calling the witness but ultimately it was not an abuse of discretion for the district court to decide to let the government call this witness this wasn't an out-of-the-blue decision this was something where there were several core conferences about this leading up to trial several motions I don't know what case law we have that goes to counsel sub additional requests that we look at the under seal file because I because the district court did that once so do we have case law that talks about us taking another look or what under what circumstances we do that your honor I don't have a specific case law handy on that issue if your honors have no further questions on this yes issue I could turn oh you're gonna turn to what I could turn to any issue that my colleagues with it they have any additional questions I don't think so okay oh and one additional thing I just wanted to add with respect to attachment B that mr. Jerome was mentioning that they that the information that we shared with the court as part of the May 5th submission was different than what he got that's because we removed redactions for because the court ordered us to this court this court ordered us yes for our May 5th submission this court ordered us to only apply redactions to third-party names and specific DEA index numbers so we in providing that copy to this court and to mr. Jerome I understand the argument that you're opposing counsel's making is that because that information was not provided to the district court it should be no your honor that was provided to the district court the district court saw the complete unredacted CS file so there were no redactions perhaps maybe some index you're saying is that at this because of our order that the defendant actually got more information than was previously provided but the district court received all of the unredacted information that's correct your honor so the district court received the entire CS file we did not apply redactions when we gave that to this to the court there may have been some internal DEA redactions of index numbers and things of that nature but this court yes the Ninth Circuit the Ninth Circuit or specifically in its order to have us very lightly redacted and so we we removed redactions that previously had been on the materials that were produced to defense counsel and so I'd like to just briefly touch on the sentencing issue and just just to go there first the the there was no procedural error here the district court the sentencing judge made clear that she understood she had discretion to vary from the guidelines based on the methamphetamine purity policy and she simply declined to do so it's very clear from her statement at sentencing and and that's based on a long line of cases starting from Kimbrough she has that discretion and the second the district court did not impose or sorry did not abuse her discretion by imposing a significant downward variance in this case and I just want to correct our brief and make it clear that the variance here was actually a hundred and twelve months below the bottom end of the guidelines I think our brief said 50 or so months it was just a calculation issue but the it was actually a hundred and twelve month variance below the bottom of the end of the guidelines and just one additional point I want to make on that even if you used the generic methamphetamine to calculate his guidelines and I just in looking at the defendant's sentencing statement where they submitted that his base offense level would be 32 if you calculated it with the generic meth he would still have received a downward variance of 18 months in terms of the sentence that was actually imposed so I just wanted to make make that point clear if your honors have any other questions on that okay thank you we just asked that you affirm thank you council I have a question okay and maybe you're going to address this but because you didn't really talk about this in your opening remarks but why did you reject the offer to recall agent Delaney that was one of the things I did want to discuss briefly first of all we were not given the opportunity to continue our cross-examination at a later date we were given the opportunity to recall him and as a strategic matter I don't want to get too far into why that happened but it it's a difference between recalling an agent and potentially opening the door to additional information than being able to cross the other thing I wanted to clear up this issue of the attachment B to the sealed file our point is not that the district court didn't review the entire unredacted file the I don't want this court to be misled into thinking that everything that's in attachment B is what we knew at trial because there are things in there that were redacted that are in attachment B including the fact that in two of the things there's a statement in 2021 and 2022 that the complaining witness doesn't have a driver's license which the complaining witness testified about his traffic record in this case is a horrible traffic abstract he's continuing to drive without a license throughout this case which is fertile impeachment material for him but the fact that the DEA knew that in 2021 and 2022 likely knew that he was continuing to compile these traffic incidents and still continue to use him as a cooperating source was relevant the other thing that was redacted from there is information about the CS being involved they're not having knowledge of other methamphetamine traffickers in the islands which part of our theory in this case is he got the meth that he claimed mr. Gonzales sold him from somebody else right so if he has knowledge of other methamphetamine specific knowledge of other methamphetamine trend traffickers that goes to that defense right he has other sources for this material and we didn't know that at trial that there's specific references to him giving the DEA information about other people from which he could receive multi-pound quantities of methamphetamine the so the other thing is I see I'm out of time but the other thing the other thing is the government today still makes this this this idea that if they didn't call the yes as a witness at trial they weren't obligated to disclose any of this information I think that's simply not true the CS in this case is essentially acting as an agent of the government if you had a government agent who had a history for example of planting evidence on a defendant other defendants and then the government says well we're not going to call him in this case when when the government was taking the position that it didn't intend to call him I think the trial court left that as an open issue yes I don't think there was a ruling is that right I don't know if there was a ruling the district court certainly says at various times well if you do call him there's all sorts of things that you're going to have to disclose and if you don't do that by June 14th I'm not going to let you call him as a witness and then they don't do it by June 14th and the court allows them to call him which I think is an abuse of discretion your arguments both of you thank you for your careful preparation and patience with our questions we'll take that under advisement and move on to the final case on the calendar
judges: FLETCHER, CHRISTEN, DESAI